IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| LATOYA WHITE, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-22-671 |
| UNIVERSITY OF MARYLAND MEDICAL CENTER, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This case features civil rights and employment discrimination claims by Plaintiff Latoya White ("White" or "Plaintiff") against Defendant, the University of Maryland Medical Center ("UMMC"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* (Compl. ¶ 1, ECF No. 1.) White claims UMMC engaged in a pattern of harassment and discriminatory behavior against her throughout her tenure as a nurse practitioner. (*Id.*) Specifically, she alleges that her supervisors discriminated against her for being pregnant and contracting COVID-19, and that they retaliated against her when she voiced her concerns to human resources. (*Id.*) White initially filed a complaint with the Baltimore Field Office of the United States Equal Employment Opportunity Commission ("EEOC") on December 20, 2021. (*Id.* ¶ 6.) The EEOC issued a Notice of Right to Sue letter only two days later, on December 22, 2021, enabling her to file the instant Complaint in this court. (*Id.* ¶¶ 7–8.) The issue before this Court is whether the EEOC was authorized to issue this Notice of Right to Sue without conducting any investigation, and without providing the defendant any opportunity to respond.

1

Now pending is Defendant's Motion to Dismiss (ECF No. 15). In support of this motion, Defendant argues that White's Notice of Right to Sue was premature, as it was issued prior to the end of the 180-day waiting period prescribed by Title VII. (Def.'s Mot. Dismiss 3–8, ECF No. 15.) Defendant also contends that the EEOC regulation authorizing the agency to issue such notices is unlawful, as the plain text of Title VII requires the EEOC to investigate every charge. (*Id.*) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's Complaint is dismissed without leave to amend, and her claims shall be remanded to the EEOC for further investigation. However, Plaintiff shall be granted leave to refile this action when the remainder of the 180-day period prescribed by 42 U.S.C. § 2000e-5(f)(1) has run, or upon the EEOC's dismissal of her charges.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The following facts are derived from Plaintiff's Complaint and are accepted as true for the purpose of Defendant's Motion to Dismiss.

Plaintiff has been employed as a nurse practitioner at the University of Maryland Medical Center ("UMMC") since January 27, 2020. (Compl. ¶ 18.) At the time she was hired, White was the only Black nurse practitioner in her department. (*Id.*) Throughout her tenure, White alleges that her supervisors exhibited a pattern of excluding her as an employee, and generally created an uncomfortable work environment. Specifically, White claims that her

"personal leave [was] unlawfully taken from her," (*id.* ¶¶ 19–21); that she was not being given ordinary assignments, (*id.* ¶¶ 24–26); that she was excluded from group recognition emails sent to her team as an effort to isolate her from her peers, (*id.* ¶¶ 29–30); that her supervisors retaliated against her by giving her a poor performance evaluation based on ambiguous metrics and false, "racially charged" accusations and comments, (*id.* ¶¶ 33–42); that she was denied telework accommodations during her pregnancy while her coworkers were given permission to work from home, (*id.* ¶¶ 43–50); and that she was denied accommodations after contracting COVID-19, (*id.* ¶¶ 56–72), among other allegations.

In response to the alleged discrimination and retaliation, White filed a complaint with the EEOC's Baltimore Field Office on December 20, 2021. (*Id.* ¶ 6.) Thereafter, White requested a Notice of Right to Sue, which the agency granted on December 22, 2021. (*Id.* ¶ 7.) White filed the instant Complaint in this Court on March 18, 2022, within the 90 days required under the terms of the Notice she received. (*Id.* ¶ 8.)

On May 2, 2022, Defendant filed a responsive Motion to Dismiss claiming that White failed to exhaust her administrative remedies before the EEOC. Specifically, Defendant claims that White's Notice of Right to Sue was premature, as the 180-day administrative review period prescribed by Congress had not yet expired when it was issued. (Def.'s Mot. Dismiss 3–8.) White's notice was issued pursuant to 29 C.F.R. § 1601.28(a)(2), an EEOC regulation that allows the agency to grant a claimant the right to sue if a relevant Director "has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge." 29 C.F.R. § 1601.28(a)(2). Defendant asserts that this regulation should be considered invalid, as 42 U.S.C. § 2000e-5(b)

3

"unambiguously directs the EEOC to investigate," and provides that the complainant may only file suit if the charge is dismissed or the claim is not resolved within 180 days. (Def.'s Mot. Dismiss 6 ("Section 2000e-5(b) mandates that the EEOC 'shall make an investigation' of a charge.").) Per this argument, as the regulation allows the complainant to bring a private action in under 180 days, it effectively relieves the EEOC of its duty to continue to investigate a complainant's claims. (*Id.*) Plaintiff counters that this Court should defer to the EEOC's regulation, as other courts have found that the statute is ambiguous as to Congress's intent. (Pl.'s Opp. to Def.'s Mot. Dismiss 2–4, ECF No. 16.)

This motion is ripe for review.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual

4

allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

A defendant may move to dismiss a complaint for the failure of a plaintiff to fully exhaust their administrative remedies under Rule 12(b)(6). *See Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 606 n.3 (W.D. Va. 2019) (citing *Stewart v. Iancu*, 912 F.3d 693, 702 (4th Cir. 2019)). "Failure to exhaust administrative remedies by failing to include a claim in the charge deprives a federal court of subject-matter jurisdiction over the claim." *Id.* at 606 (citing *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009)). In filing a charge of employment discrimination, complainants are required to exhaust the administrative process before proceeding to federal court. *See, e.g.*, 42 U.S.C. § 2000e(b), (f)(1); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005); *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). Courts in this circuit have found that the purpose of this exhaustion requirement is to ensure that an employer has notice of an employee's discrimination claim before litigation commences, and to provide an avenue for informal resolution of the dispute. *Sydnor v. Fairfax County, Va.*, 681 F.3d 591, 593 (4th Cir. 2012).

**ANALYSIS**

Plaintiff Latoya White ("White") claims that Defendant, the University of Maryland Medical Center ("UMMC"), engaged in a pattern or practice of discriminatory behavior against her throughout her tenure as a nurse practitioner. However, the merits of White's claims are not at issue. Rather, the parties litigate whether White's Notice of Right to Sue was premature. White filed her complaint with the Equal Employment Opportunity Commission ("EEOC") on December 20, 2021, and the agency issued a Right to Sue letter only two days later, on December 22, 2021. (Compl. ¶¶ 6–7.) Defendant asserts that 29 C.F.R. § 1601.28(a)(2), the regulation that authorizes the EEOC to issue a right to sue letter less than 180 days after the claim is filed, is an impermissible construction of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, which serves as the EEOC's organic statute. (Def.'s Mot. Dismiss 3–8.) For the reasons set forth below, this Court concludes that the EEOC's regulation is invalid, and that White's Notice of Right to Sue is premature. Accordingly, Defendant's Motion to Dismiss (ECF No. 15) is hereby **GRANTED**. Plaintiff's Complaint shall be dismissed without prejudice with respect to her right to refile her allegations against UMMC once her remedies are exhausted, but without leave to amend. This case is remanded to the EEOC for further administrative proceedings.

In 1972, Congress enacted amendments to Title VII of the Civil Rights Act of 1964, establishing and prescribing the duties of the Equal Employment Opportunity Commission. *See* Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, 86 Stat. 103, 104–07 (codified as amended at 42 U.S.C. § 2000e-5 et seq.). One purpose of these amendments was to establish "an integrated, multistep enforcement procedure" for the review of employment

6

discrimination claims before the EEOC, "culminating in the EEOC's authority to bring a civil action in a federal court." *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 359 (1977). Pursuant to these amendments, and among other responsibilities, "[w]henever a charge is filed by or on behalf of a person claiming to be aggrieved . . . the Commission shall serve a notice of the charge . . . on such employer . . . within ten days, and shall make an investigation thereof." 42 U.S.C. § 2000e-5(b). "The EEOC is then required to investigate the charge and determine whether there is reasonable cause to believe that it is true." *Occidental Life*, 432 U.S. at 359. If reasonable cause does not exist, the EEOC must dismiss the charge. 42 U.S.C. § 2000e-5(b). Should reasonable cause exist, the EEOC is directed to use "informal methods of conference, conciliation, and persuasion" to resolve the dispute and abate the alleged discriminatory practice. *Occidental Life*, 431 U.S. at 359 (quoting 42 U.S.C. § 2000e-5(b)). If no resolution is reached through these methods, the EEOC may file a civil action on behalf of the complainant after thirty days have elapsed since the date the charge was filed. 42 U.S.C. § 2000e-5(f)(1). Finally, the complainant may bring a private claim if the charge is dismissed by the EEOC, or, after 180 days have passed since the filing of the charge if the EEOC has not filed an action on behalf of the employee. *Id.*

      Accordingly, the Equal Employment Opportunity Act of 1972 provides the EEOC with four options once a civil charge has been filed by an aggrieved employee. First, the EEOC must investigate the charge and either dismiss for a lack of reasonable cause or attempt to resolve the charge through conciliation and other informal dispute resolution techniques. Second, should conciliation fail, the agency may file a civil action on the complainant's behalf, or permit the complainant to file suit on their own behalf once 180 days have elapsed since

the charge was filed. *See Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 608 (W.D. Va. 2019) ("[I]t is clear that Congress intended for the EEOC to have control over charges of discrimination for 180 days.").

In 1977, the EEOC promulgated a regulation adding a fifth option. *See* Delegations of Authority and Other Amendments, 42 Fed. Reg. 55,388, 55,393 (Oct. 25, 1977). As currently enacted, 29 C.F.R. § 1601.28(a)(2) permits the EEOC to issue a Notice of Right to Sue before 180 days have elapsed whenever an appropriate EEOC official "has determined that it is probable that the EEOC will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect." 29 C.F.R. § 1601.28(a)(2). Thus, the regulation authorizes the EEOC to issue an early right to sue notice if it finds that it will not be able to complete an agency investigation within 180 days. Here, the EEOC issued White a Notice of Right to Sue after processing her case for only two days.

The issue in this case is whether 29 C.F.R. § 1601.28(a)(2) is a valid regulation that comports with the EEOC's authority under Title VII of the Civil Rights Act and its 1972 amendments. Authority on this issue is sharply divided. The United States Court of Appeals for the Fourth Circuit has declined to address whether § 1601.28(a)(2) aligns with the EEOC's authority under its operative statute. *See MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 248 (4th Cir. 2001) (addressing case involving early right-to-sue later, but declining to address regulation and deciding the case on other grounds). Other Circuits are split on this issue. The Ninth, Tenth, and Eleventh Circuits have found the statute is ambiguous and the regulation is valid. *See Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1275 (10th Cir. 2001); *Sims v. Trus Joist*

*MacMillan*, 22 F.3d 1059, 1063 (11th Cir. 1994); *Brown v. Puget Sound Elec. Apprenticeship & Training Tr.*, 732 F.2d 726, 729 (9th Cir. 1984). The D.C. Circuit has held that the regulation is invalid. *See Martini v. Federal Nat. Mortg. Ass'n*, 178 F.3d 1336, 1345 (D.C. Cir. 1999).

In the absence of clear guidance from the Fourth Circuit, district courts in this circuit have reached divergent conclusions on the validity of 29 C.F.R. § 1601.28(a)(2). *Compare Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 609–10 (W.D. Va. 2019) (regulation invalid), *with Bryant v. Dan River Inc.*, 209 F. Supp. 2d 609, 610 (E.D. Va. 2002), *and Marston v. AT&T Corp.*, 210 F.R.D. 573, 576–77 (E.D. Va. 2002) (regulation valid). Similarly, Judges of this Court are divided on this issue. *Compare Loney v. Carr-Lowrey Glass Co.*, 458 F. Supp. 1080, 1081 (D. Md. 1978) (Miller, J.) (regulation invalid), *with Thomas v. Bet Sound-Stage Rest./BrettCo, Inc.*, 61 F. Supp. 2d 448, 458–59 (D. Md. 1999) (Williams, J.), *Miller v. Balt. Gas & Elec. Co.*, 202 F.R.D. 195, 206 (D. Md. 2001) (Blake, J.), *and Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 472 (D. Md. 2002) (Motz, J.) (regulation valid). Accordingly, considering these inconsistent interpretations of 29 C.F.R. § 1601.28(a)(2), this Court will conduct an independent analysis of the validity of this regulation.

"When a challenger asserts that an agency action conflicts with the language of a statute, we generally apply the two-step analytical framework set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984)." *Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 643 (4th Cir. 2018); *see also* John R. Grimm & Landyn Wm. Rookard, *How Federal and Maryland Courts Review Administrative Agency Actions*, 81 Md. L. Rev. 1224, 1256 (2022) ("A surprising feature of *Chevron* deference is that it applies even when an agency's interpretation conflicts with an earlier judicial interpretation of the statute at issue." (citing

9

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005))). The first step of the *Chevron* analysis is to assess "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. Where a statute is ambiguous, courts move to the second step of the *Chevron* test "and defer to the agency's interpretation so long as it is based on a permissible construction of the statute." *Hardy*, 377 F. Supp. 3d at 608 (citing *Chevron*, 467 U.S. at 843). After evaluating the plain language of Title VII and its legislative history, this Court concludes that the statute is unambiguous and the intent of Congress is clear—the EEOC may not grant a complainant leave to file a private lawsuit until it has analyzed the issues, given the defendant the opportunity to respond, and attempted conciliation or dismissed the action, or until 180 days have passed since this process was initiated.

The United States Court of Appeals for the D.C. Circuit has held that 29 C.F.R. § 1601.28(a)(2) violates the EEOC's statutory duty to investigate every charge before it. *Martini v. Federal Nat'l Mortg. Ass'n*, 178 F.3d 1336, 1347–48 (D.C. Cir. 1999). In *Martini v. Federal National Mortgage Association*, the D.C. Circuit conducted a thorough analysis of the language and legislative history of Title VII and its amendments, and concluded that Congress "clearly intended to prohibit private suits within 180 days after charges are filed." 178 F.3d at 1347. The court noted that 42 U.S.C. § 2000e-5(b) explicitly states that the EEOC "shall" investigate charges filed with the agency, and that it "'shall' make a reasonable cause determination 'as promptly as possible,'" and no later than 120 days after the charge is filed. *Id.* at 1346 (quoting 42 U.S.C. § 2000e-5(b)). As the word "shall" indicates mandatory action, the court held that

10

"the Commission's duty to investigate is both mandatory and unqualified." *Id.*; *accord Hardy*, 377 F. Supp. 3d at 608 ("'Shall' is an unambiguously mandatory term . . . ." (quoting *Sierra Club*, 909 F.3d at 645)). While "Congress well understood that the EEOC's limited resources preclude it from investigating every charge within 180 days," the statute provides an "express direction to the Commission that it investigate all charges" and indicates a strong preference that "the vast majority of complaints will be handled through the offices of the EEOC." *Martini*, 178 F.3d at 1346–47. As the early filing of a right to sue letter "typically terminates EEOC investigation of the charge," the challenged regulation, by authorizing such notices, "undermines [EEOC's] express statutory duty to investigate every charge filed, as well as Congress's unambiguous policy of encouraging informal resolution of charges up to the 180th day." *Id.* at 1347.[1]

The Ninth, Tenth, and Eleventh Circuits have reached the opposite conclusion, with the Tenth Circuit providing the most persuasive reasoning.[2] *Brown*, 732 F.2d at 729; *Walker*,

---

[1] The *Martini* court found further support for this position in the legislative history of the statute. The court explained that Congress was aware that the agency had limited resources and likely would face difficulty investigating every charge in less than 180 days, "but nevertheless 'hoped that recourse to the private lawsuit will be the exception and not the rule.'" *Id.* at 1346–47 (quoting 118 Cong. Rec. 7168). Furthermore, when the Equal Employment Opportunity Act first passed in the Senate, it authorized private actions after only 150 days. 118 Cong. Rec. 4945 (1972). The conference committee amended the Act and chose the 180-day period as the earliest time the complainant could bring suit on their own behalf, indicating a Congressional preference for administrative action and an exhaustion of EEOC remedies. *Martini*, 178 F.3d at 1347 (citing H.R. Rep. No. 92-899 (1972), *reprinted in* 1972 U.S.C.C.A.N. 2179, 2182). At least two Senators envisioned that the statute as enacted would lead to a 180-day suspension of private suits. *Id.* (noting that "Senator Javits said that it required complainants 'necessarily [to] sit [ ] around awaiting 6 months,'" while "Senator Dominick called it a '180–day private filing restriction'" (quoting 118 Cong. Rec. 1069 (1972) (Senate debate)).

[2] The Ninth Circuit in *Brown v. Puget Sound Electrical Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir. 1984) was bound in its decision to follow its earlier precedent in *Bryant v. California Brewers Ass'n*, 585 F.2d 421, 425 (9th Cir. 1981). However, *Bryant* was decided before *Chevron*, and the *Bryant* court did not assess the plain meaning of the word "shall" in the statute. The Eleventh Circuit

11

240 F.3d at 1274–77; *Sims*, 22 F.3d at 1061–62. In *Walker v. United Parcel Service, Inc.*, 240 F.3d 1268 (10th Cir. 2001), the United States Court of Appeals for the Tenth Circuit held that 29 C.F.R. § 1601.28(a)(2) is "a reasonable interpretation of the statute as amended." 240 F.3d at 1275. The court started from the proposition that 42 U.S.C. § 2000e-5(f)(1) was ambiguous, as "it does not expressly prohibit EEOC from issuing [a notice of right to sue] earlier" than 180 days. *Id.* at 1274. The court observed an "obvious tension" between "the EEOC's stated duty to investigate every charge" and Congress's acknowledgment "that EEOC's inability to complete performance of that duty should not deprive a private charging party of the right to institute a court action." *Id.* Resolving this tension, the court reasoned that the purpose of the 180-day rule was to allow the aggrieved party to sue "where there is agency inaction, dalliance, or dismissal of the charge, or unsatisfactory resolution." *Id.* at 1274. Accordingly, the court held that 29 C.F.R. § 1601.28(a)(2) was a reasonable interpretation of the statute, as it "furthered Congress' original purpose in adopting Section 2000e-5(f)(1): protecting aggrieved individuals from undue delay by releasing them from the 'administrative quagmire which occasionally surrounds a case caught in an overloaded administrative process.'" *Id.* (quoting H.R. Rep. No. 92-238 (1971)).

    This Court agrees with the D.C. Circuit's conclusion that 29 C.F.R. § 1601.28(a)(2) violates the EEOC's duty to investigate and exceeds the agency's authority under Title VII. The statute that imposes this obligation, 42 U.S.C. § 2000e-5(b), states that the EEOC "shall" investigate all charges brought to the agency, indicating that this duty is mandatory. 42 U.S.C.

---

adopted the Ninth Circuit's rationale, and this Court declines to follow this precedent for the same reason. *Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1061–62 (11th Cir. 1994).

§ 2000e-5(b). Unless the EEOC dismisses a charge for a lack of reasonable cause, the statute allows a claimant to bring suit only if the EEOC fails to resolve the dispute within 180 days. *Id.* § 2000e-5(f)(1). These requirements are not ambiguous. Congress provided exactly four avenues for the EEOC to dispose of a charge: dismissal, conciliation, agency litigation, or a private action after 180 days. *Hardy*, 377 F. Supp. 3d at 610. The challenged regulation, 29 C.F.R. § 1601.28(a)(2), impermissibly adds a fifth option, allowing the EEOC to issue an early right to sue letter without first attempting to investigate the merits of the charge, and without first pursuing an informal resolution of the dispute. *Martini*, 178 F.3d at 1346.

This Court respectfully disagrees with the Tenth Circuit's conclusion that the statute is ambiguous and the regulation is a reasonable interpretation of Congressional intent. Despite the "tension" between 42 U.S.C. § 2000e-5(b) and § 2000e-5(f)(1) noted by the *Walker* Court, these statutes "can be read together to an unambiguous result: Congress intended [for] the EEOC to investigate every charge, but acknowledged the potential for charges to become lost or dormant in the agency's backlog, leaving aggrieved persons without a swift remedy." *Hardy*, 377 F. Supp. 3d at 609. This interpretation aligns with the purpose of the EEOC's exhaustion requirement. As Judge Russell of this Court has noted, that purpose is "to notify the employer of the alleged discrimination and give it 'a[n] initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions.'" *Byington v. NBRS Fin. Bank*, 903 F. Supp. 2d 342, 348–49 (D. Md. 2012) (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005)).

The facts of this case illustrate the problems created by 29 C.F.R. § 1601.28(a)(2), and highlight the manner in which this regulation disrupts the EEOC's obligation to investigate.

As noted above, the EEOC received White's complaint on December 20, 2021, and issued her Notice of Right to Sue letter only two days later, on December 22, 2021. (Compl. ¶¶ 6–7.) This Court struggles to comprehend how the EEOC could have conducted any adequate investigation into the merits of White's claim in such a short time. Two days is not sufficient to determine whether "there is reasonable cause to believe that [the charge] is true," much less to pursue "informal methods of conference, conciliation, and persuasion," as required by Title VII. *Occidental Life*, 432 U.S. at 359. It is also shorter than the ten days the EEOC is afforded to notify an employer of the allegations against it. 42 U.S.C. § 2000e-5(b).

Accordingly, this Court concludes that 29 C.F.R. § 1601.28(a)(2) violates the EEOC's statutory duty to investigate all charges and exceeds its authority under Title VII. Although Congress may have recognized that the EEOC cannot feasibly resolve all investigations within 180 days, the plain language of Title VII demonstrates that the agency is obligated to try. Allowing the EEOC to terminate its investigative process in advance of the 180-day deadline contravenes both "section 2000e-5(b)'s express direction to the [EEOC] that it investigate all charges," and "Congress's unambiguous policy of encouraging informal resolution of charges up to the 180th day." *Id.* at 1346–47; *see Martini*, 178 F.3d at 1348 ("[T]he power to authorize early private suits inevitably and impermissibly allows the EEOC to relax its aggregate effort to comply with its statutory duty to investigate every charge filed.").

As this Court finds that 29 C.F.R. § 1601.28(a)(2) is invalid, White's Notice of Right to Sue is premature, and her Complaint is subject to dismissal. The D.C. Circuit in *Martini*, and other courts faced with this issue, have concluded that the appropriate remedy is to dismiss the complaint without prejudice, and to allow the plaintiff to re-file only after the EEOC has

either dismissed the charge for lack of reasonable cause, or attempted to resolve the charge for the remainder of the 180-day investigation period imposed by Title VII. *See Martini*, 178 F.3d at 301 ("Finding Martini's suit untimely, we vacate the district court's judgment and remand with instructions to dismiss her complaint without prejudice. Because the EEOC stopped processing her charge 21 days after she filed it, Martini may file a new complaint in district court only after the Commission has attempted to resolve her charge for an additional 159 days."); *accord Loney*, 458 F. Supp. at 1081 (ordering dismissal "without prejudice to the right of the plaintiffs to refile this action when the remainder of the 180-day period . . . has run or when their charges have been dismissed by the EEOC"); *see also Hardy*, 377 F. Supp. 3d at 610; *Jones v. Ashcroft*, 321 F. Supp. 2d 1, 12 (D.D.C. 2004); *Hill v. Washington Metro. Transit Auth.*, 231 F. Supp. 2d 286, 288 (D.D.C. 2002); *Santos v. Lynch*, No. 16-1039 (ABJ), 2016 WL 3951060, at *5 (D.D.C. Jul. 20, 2016).

This Court concludes that the same remedy is appropriate in this case. Accordingly, Defendant's Motion to Dismiss (ECF No. 15) is hereby **GRANTED**. White's Complaint shall be dismissed without leave to amend, and remanded to the EEOC for further investigation. The Clerk's Office shall be instructed to close this case. However, Plaintiff shall be afforded leave to refile this action when the remainder of the 180-day period prescribed by 42 U.S.C. § 2000e-5(f)(1) has run, or upon any dismissal of her charges by the EEOC.

## CONCLUSION

For the reasons stated above, it is this 23rd day of November, 2022, hereby ordered that Defendant University of Maryland Medical Center's Motion to Dismiss (ECF No. 15) is **GRANTED**.

A separate order follows.


Dated: November 23, 2022

_____
Richard D. Bennett
United States District Judge